# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**EVANS CONSTRUCTION COMPANY,**
**Employer Below, Petitioner**

**FILED**
**September 5, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 22-ICA-322**        (BOR Appeal No. 2058461)
                              (JCN: 2017013080)

**ANTHONY SCHAU,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Evans Construction Company ("ECC") appeals the November 17, 2022, order of the Workers' Compensation Board of Review ("Board"), which affirmed the Workers' Compensation Office of Judges' ("OOJ") reversal of the claim administrator's award of permanent partial disability ("PPD"). Respondent Anthony Schau filed a timely response.[1] ECC did not file a reply. The issue on appeal is whether the Board erred in affirming the OOJ order that reversed the claim administrator's order granting Mr. Schau an 11% PPD award and instead granted Mr. Schau a 33% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). Upon ECC's appeal, this Court affirmed the Board's order in *Evans Construction Company v. Anthony Schau*, No. 22-ICA-322, 2023 WL 2861722 (Ct. App. Apr. 10, 2023) (memorandum decision), determining that no error was committed by the Board. Subsequently, ECC filed a petition for rehearing and argued, in part, that not all of its arguments were addressed on appeal. Following a review, the Court granted the petition for rehearing. Having considered the petition for rehearing, the parties' briefs, the appendix record, and the applicable legal authority, this Court finds no substantial question of law and no prejudicial error and, therefore, we again affirm the Board's order. The Court also disposes of the case through a memorandum decision as contemplated under Rule 21 of the West Virginia Rules of Appellate Procedure.

On November 18, 2016, while employed by ECC, Mr. Schau fell into a deep hole and both of his shoulders were caught on the edge of the hole with his feet dangling off the ground. On December 21, 2016, Mr. Schau underwent x-rays of both shoulders which found mild to moderate joint spurring and degenerative changes. On December 29, 2016,

---

[1] Mr. Schau is represented by Christopher J. Wallace, Esq. ECC is represented by Daniel G. Murdock, Esq.

1

Mr. Schau underwent bilateral shoulder MRIs which revealed a complete full thickness tear of the right shoulder, complete tearing of the right bicep, moderate to advanced osteoarthritis of the right shoulder, degenerative joint disease in the left AC joint, and subacromial spurring on the left. The claim administrator issued an order dated January 17, 2017, which held the claim compensable for bilateral shoulder strain and right AC sprain.

Mr. Schau was referred to Dante Marra, M.D., an orthopedic surgeon, for treatment of his shoulder injuries. Dr. Marra requested authorization to perform bilateral rotator cuff repair and distal clavicle resection of the left shoulder. These surgeries were authorized by the claim administrator by order dated April 6, 2017. Due to a lack of improvement, Mr. Schau underwent a reverse left shoulder arthroplasty. This procedure was authorized to treat recognized injuries in the claim by the claim administrator orders dated February 27, 2018, and May 9, 2018.

On August 27, 2020, Mr. Schau saw Chaun Fang Jin, M.D., for an independent medical examination ("IME"). Mr. Schau reported his current symptoms as being constant burning pain and severe restrictions in range of motion. Mr. Schau also described how his shoulder injuries affect his activities of daily living and his inability to work. Dr. Jin's physical examination showed tenderness in both shoulders and significantly decreased range of motion, particularly in the left shoulder. Dr. Jin found that Mr. Schau's left shoulder was entitled to a 48% upper extremity ("UE") impairment prior to any allocation for preexisting disability.

Dr. Jin apportioned part of the impairment: 24% for chronic degenerative arthrosis and preexisting degenerative arthritis and 12% for "diabetic related frozen shoulder." After apportionment, Dr. Jin found only 12% upper extremity impairment for the left shoulder related to the injury. That upper extremity impairment converted to a 7% whole person impairment ("WPI") for the left shoulder injury. Dr. Jin awarded no impairment for the left distal clavicle resection. Dr. Jin found 18% upper extremity impairment for the right shoulder injury. After apportionment for his preexisting conditions, she opined that Mr. Schau had only a 6% upper extremity impairment for the right shoulder, which converted to 4% WPI. Combining the two impairments, Dr. Jin reached a final opinion that Mr. Schau had an 11% WPI. The claim administrator issued an order on October 14, 2020, granting an 11% PPD award based upon the report of Dr. Jin. Mr. Schau protested that order.

On December 22, 2020, Mr. Schau was seen by Bruce Guberman, M.D., for an IME. Dr. Guberman performed a physical evaluation and reviewed the applicable medical records. Mr. Schau again set forth his history of not having any prior problems with his shoulders before the workplace injuries. Dr. Guberman's physical evaluation of both shoulders showed tenderness and significant loss of motion in both the right and left shoulders. Dr. Guberman assigned an impairment rating of 10% UE impairment for Mr. Schau's left distal clavicle resection surgery. Dr. Guberman also found a 17% UE range of motion impairment for the left shoulder and an additional 30% UE impairment for the total

2

arthroplasty of the left shoulder. These combined for a finding of 48% UE impairment of the left shoulder which converted into a 29% WPI rating. For the right shoulder, Dr. Guberman found a 10% UE range of motion impairment which converted to a 6% WPI rating. Dr. Guberman then combined the 6% WPI for the right shoulder injury with the 29% WPI for the left shoulder reaching a total impairment of 35% which was then converted to a total WPI rating of 33%.

Dr. Guberman chose not to apportion any impairment to the preexisting conditions. Dr. Guberman opined that,

> [a]lthough the claimant does have evidence of pre-existing degenerative changes based on imaging studies of the left shoulder, as far as can be determined, they were not causing any interference with activities of daily living, range of motion abnormalities or functional limitations before the current injury, and therefore, there is no objective medical means to determine what, if any, portion should be made for a pre-existing condition.

Mr. Schau was seen by Christopher Martin, M.D., on July 7, 2021, for an IME. Dr. Martin's evaluation found that Mr. Schau had current severe bilateral shoulder pain as well as severe restrictions in range of motion. Dr. Martin's report notes that his measurements were reasonably close to the measurements made by Drs. Jin and Guberman. Dr. Martin found that Mr. Schau had left shoulder UE impairment of 43%, or 26% WPI. For the right shoulder, Dr. Martin found 15% UE impairment, or a 9% WPI. Combining those impairment ratings would result in a total WPI of 33%. Dr. Martin agreed with Dr. Jin's two-thirds reduction of impairment for the right shoulder and three-fourths reduction of impairment for the left shoulder for preexisting degenerative joint disease. Dr. Martin did not find impairment for the distal clavicle resection. Ultimately, Dr. Martin concluded that only 10% WPI would be related to the workplace injury.

On May 25, 2022, the OOJ reversed the claim administrator's order and found that Mr. Schau established that he has a 33% WPI. The Board affirmed the OOJ's order on November 17, 2022. ECC appeals the Board's order. By order dated January 27, 2023, this Court stayed the order increasing the PPD award from 11% to 33%.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

3

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n,* 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, ECC argues that the OOJ and Board erred in finding that Dr. Guberman's report was the most reliable and that Dr. Guberman's award of impairment for the distal clavicle resection and the reverse arthroplasty was duplicative. ECC further argues that the level of impairment caused by Mr. Schau's preexisting conditions is definitely ascertainable because there is diagnostic evidence available.

This Court held in *Duff* that,

[t]he Supreme Court of Appeals of West Virginia has previously recognized that radiographic evidence of degenerative changes alone is not sufficient to allow apportionment for preexisting injury. There must be something more, some evidence of a detrimental effect on work or the activities of daily living. Where such evidence of impairment is lacking, the Court has found that apportionment was not appropriate. *See Galaxy Distributing of WV, Inc. v. Spangler*, No. 19-0803, 2020 WL 6559079 (W. Va. Nov. 6, 2020) (memorandum decision) (unanimous decision) (the Board did not err in finding that apportionment was arbitrary and speculative where preexisting changes to right shoulder did not appear to affect the claimant's work or daily activities); *Minor v. West Virginia Division of Motor Vehicles*, No. 17-0077, 2017 WL 6503113, at *2 (W. Va. Dec. 19, 2017) (memorandum decision) (3-2 decision reversing Board of Review decision apportioning for preexisting condition) ("While the 2004 x-ray may have shown degenerative changes [to the right knee], those changes did not appear to affect Mr. Minor's ability to work or his activities of daily living. Therefore, we agree with the Office of Judges' findings that . . . . apportionment of the impairment rating due to the 2004 x-ray was improper. . . .").

*Duff* at 558, 882 S.E.2d at 924.

The OOJ found that Dr. Jin's apportionment for "diabetic frozen shoulder," which is a diagnosis that is not included in any of Mr. Schau's medical records, nor is it included in the reports of Drs. Martin or Guberman, made her report an "outlier" and less reliable. The OOJ noted that it is undisputed that Mr. Schau's preexisting conditions were asymptomatic prior to the injury and after the injury Mr. Schau's symptoms have continuously manifested. The OOJ further found that the American Medical Association *Guides to the Evaluation of Permanent Impairment,* (4th ed. 1993) ("*Guides*") do not identify total shoulder arthroplasty and distal clavicle resection as duplicative. The OOJ noted that the *Guides* identifies several levels of the upper extremity; total shoulder is in the first level and distal clavicle is in the second level. The *Guides* directs that the levels be combined, if more than one level is involved, to get the total impairment.

After review, we conclude that the OOJ was not clearly wrong in finding that Dr. Guberman's report was the most reliable because of the finding that Mr. Schau's preexisting conditions were asymptomatic. Further, the OOJ was not clearly wrong in finding that the impairment ratings for total shoulder arthroplasty, and distal clavicle resection are not duplicative. Ultimately, the OOJ, as affirmed by the Board, did not err in granting Mr. Schau a 33% PPD award based on Dr. Guberman's report.

Finding no error in the Board's November 17, 2022, order, we affirm and further, vacate the stay granted by this Court on January 27, 2023.

Affirmed.

**ISSUED:** September 5, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

5